[No. 2879.]

CHARLEY ADAMS v. THE STATE.

1. ILLEGAL BRANDING OF STOCK—FORMER CONVICTION—PRACTICE—CASE STATED.—To a prosecution for illegal branding of cattle, the defendant, in addition to his plea of not guilty, interposed a special plea of a former conviction for the same offense in the same court. This special plea was defective, in that it failed to set out the record of conviction, and did not specifically allege the identity of the person convicted and the offense of which he was convicted. These defects, however, were not excepted to at the trial, and the defendant was permitted, without objection, to introduce testimony in support of the plea. In support of the plea, the defendant proved that at the time and place that he marked and branded the animal involved in this prosecution, he also marked and branded another yearling, whose owner was unknown, for which last act he had been indicted, tried and convicted. This proof was made by oral testimony, and the record of conviction was not, as it should have been, read in evidence. To this, however, the State made no objection. *Held*, that, under the circumstances, the evidence must be considered, as it is brought up in the record.

2. SAME.—It is well settled, in cases of theft, that the stealing of different articles of property, belonging to different persons, at the same time and place, so that the transaction is the same, is but one offense against the State, and the accused cannot be convicted on separate indictments charging different parts of one transaction, as if they were distinct offenses, as a conviction on one of the indictments bars a prosecution on the other. *Held*, that the same rule applies to the offense of illegal marking and branding stock.

3. SAME—CHARGE OF THE COURT.—With respect to the question involved, the concluding part of the charge of the court instructed the jury, in effect, if the marking and branding of one of the animals was done, perfected and completed by one act and transaction, and, after such completion, the other animal, if it belonged to a different owner, was, by a different act, marked and branded, it would be a different transaction and offense, although the branding and marking may have been done near the same time and place. *Held*, error, in view of the rule announced and the evidence in this case. See the opinion *in extenso* for the charge at length, and for an elucidation of the question.

4. SAME.—Upon the same issue, the defendant requested the court to charge the jury as follows: "If you believe, from the evidence in this case, that the animal charged to be illegally marked and branded, in this case, was marked and branded at the same time and place as the animal charged to have been illegally marked and branded in the indictment in case No. 622, on which indictment the defendant has been tried and convicted, so as to make the marking and branding of the two animals one

and the same transaction, or part of the same transaction, then, if the jury so believe, they will find the special plea of defendant true." *Held*, that the requested charge embodied the correct rule upon the subject, and its rejection was error.

5. SAME—PRACTICE—EVIDENCE.—Over objection, the State was permitted to read in evidence the defendant's application for an attachment for certain witnesses, in which application he stated facts which he expected to prove by the absent witnesses, and which facts constituted a different defense than that he urged on the trial. This application was sworn to by defendant when he was confined as a prisoner in jail, and he was not cautioned that it might be used against him. *Held*, that, under such circumstances, the application for attachment was erroneously admitted in evidence.

APPEAL from the District Court of Comanche. Tried below before the Hon. W. A. Blackburn.

The indictment in this case charged that the appellant illegally marked and branded a certain yearling of the neat cattle kind, the property of some person to the grand jury unknown, in the county of Comanche, State of Texas, on the fifteenth day of April, 1881. He was convicted, and his punishment affixed at a term of two years in the penitentiary.

Thomas J. Hanson was the first witness introduced by the State. He testified that he was acquainted with defendant and William Howell on or about April 15, 1881. The witness, defendant, Bill Howell, Scott Groves, Rufus Mahan and a number of others were present at a cow herd at Onion valley, on the Leon river, in Comanche county, on that day. This herd belonged to some northern cow hunters. After leaving the cow herd, the party separated, to make a drive up the creek in squads. The agreement was to drive all cattle belonging to any of the party, pen the same at the witness's pen, and there divide them. Some of the party went on one side, and some on the other side of the creek. When the witness got to his pen, he found that it contained a small bunch of cattle, including two unmarked and unbranded yearlings. One of these yearlings was a white, black headed, and the other a dark red heifer yearling. The witness did not know who penned the cattle. Mr. Harbison, the defendant, Bill Howell, S. W. Groves, Rufus Mahan, Jesse Williams and a number of other parties were at the pen. The parties indulged largely in jest about the unmarked and unbranded animals. Harbison had some cattle in the pen. These were being cut out, and the yearlings started out with

them. Bill Howell stepped in front of them and said: "Charley and I want these. They are ours." Defendant added: "Yes, we will take care of them." Either the defendant or Howell then said: "If we do not take them, the northern cow drivers will." Some one then remarked to Harbison: "When you have been in the cow business as long as I have, you will learn not to let such cattle as these (referring to the unmarked yearlings) go by."

The yearling involved in this prosecution belonged to a white cow with a brown head. The mother cow was branded with a cross on the hip, and was marked with a crop off the right ear and an over and underbit in the left ear. This cow the witness had known in the neighborhood as an estray for two or three years, and had known the yearling for at least twelve months. The yearling, the witness knew, was calved in the range, and was past a year old when penned on the occasion referred to. No one in the county claimed her that the witness had ever heard of. The defendant, after the occurrences at the pen, drove the mother cow off the range, but returned and remained until some one else took her away. The two unmarked and unbranded yearlings were turned out, and were driven from the witness's pen with Mr. Harbison's cattle. The defendant, Bill Howell, Groves and Mahan went off with them, as well as the witness remembered.

The witness saw these two yearlings, next after that, at his pen, on the first or second day after they were driven off with Harbison's cattle. They had been marked and branded in the interim, in a mark and brand that the defendant had purchased about a month before. At this time, they were in charge of defendant, Howell Groves and Mahan. The parties named drove them from the witness's pen, toward the town of Comanche, on or about April 15, 1881. This white heifer was first put in the witness's pen on the evening preceding the penning of the bunch of cattle on the day of the drive. It was penned, roped and tied up by the defendant and William Howell. It made its escape in some manner that evening or night, and was penned again on the next day with the bunch of cattle. Witness's pen and that of Mrs. Adams are in the county of Comanche, State of Texas.

W. P. Harbison was the next witness for the State. He testified that he saw the defendant, with Hanson and the other parties named by Hanson, and several others, at the northern cat-

tle herd, in Onion valley, on the Leon river, in Comanche county. This party made a drive to Hanson's pen, one squad going up one side, and another up the other side of the creek. The understanding was that all the cattle within the scope of the drive were to be penned, and those not owned by any of the party were to be cut out and returned to the range. The bunch collected by the witness's party was driven up to the back of the pen. While this bunch was being held at this point, or just before the pen was reached, an unmarked, unbranded white heifer yearling, with a black head, ran from the bottom into the bunch. After the other party penned their bunch, the witness and his party drove their bunch around the gap and penned them.

The party present numbered fifteen or twenty men, including those named by Hanson. Witness saw two unmarked and unbranded yearlings in the pen; the one described and a red heifer yearling with dark points. When the cutting out commenced, the witness asked who claimed the two unmarked yearlings. Howell said: "Charley and I want them; they are ours." Defendant said: "We will take care of them." Witness remarked: "I want it distinctly understood that I have nothing to do with them. I will have nothing to do with any unmarked and unbranded cattle." Some one of the party said something to the effect: "If we don't take them, the northern cattle men will." Some one else remarked: "When you have been in the cattle business as long as I have, you will learn to take care of such cattle as these," meaning the unmarked yearlings. The cattle were all turned out and driven to, and penned in, Mrs. Adams's pen. Witness's cattle were then cut out and turned out from Mrs. Adams's pen. Defendant, Bill Howell and several others were along, helping to drive the cattle. They were, however, together with Groves and Mahan, left at Mrs. Adams's pen, when witness drove his cattle home from the pen. These two yearlings were driven and penned at Mrs. Adams's pen together and at the same time. They were unmarked and unbranded when penned at Mrs. Adams's. When first penned at Hanson's, these yearlings were unmarked, unbranded, and were generally considered estrays.

Red Stone testified, for the State, that he knew the yearling involved in this prosecution, and knew its mother. They were estrays, and were so regarded in the neighborhood.

G. A. Beeman testified, for the State, that in the spring of 1882 he made a contract with the defendant to purchase a num-

ber of cattle. Defendant delivered about thirty head of cattle on that contract, which were received for the witness by C. C. Campbell. The defendant executed a bill of sale to the witness, at the bank of Hill, Moore & Co., in the town of Comanche. The witness remembered that in the bunch of cattle there was a white heifer yearling with a black head.

Jesse Williams testified, for the State, that he was at Hanson's cattle pen in the spring of 1881, and there saw the two heifer yearlings described by previous witnesses. These yearlings, the witness understood, were estrays. Either the defendant or Bill Howell claimed them. They were turned out of that pen and driven off with Mr. Harbison's cattle.

It was proved by the State, and admitted by the defense, that the defendant forfeited his bail bond in this case at the September term, 1882.

Sheriff Cox testified that he had made diligent search for the defendant since the last general election, but failed to find him in the county. Defendant was arrested in Erath county in June, 1883.

Two or three members of the grand jury who found the indictment in this case testified that, while the case was under consideration, the grand jury made diligent and unsuccessful search for the owner of the two heifer yearlings described. The State closed.

W. S. Groves was the first witness for the defense. He testified that he and the defendant were brothers-in-law. Witness was at Hanson's cattle pen on the occasion referred to by the previous witnesses. He saw the parties named by the other witnesses, and several other parties, at the pen on that occasion. He also saw at that time and place the two yearlings described by the other witnesses. The bunch of cattle in the pen at that time numbered fifteen or twenty head. Considerable talk about the unmarked yearlings was indulged in by the parties. The two yearlings were turned out with Mr. Harbison's cattle, and were driven with them to Mrs. Adams's pen. Harbison took his cattle on home, and the two yearlings were left in Mrs. Adams's pen. Rufus Mahan left Mrs. Adams's that night, but witness remained. Next morning Mahan came back. He was going to the pen on foot when witness first saw him. On that morning, the next after they were penned at Mrs. Adams's, Mahan, defendant and witness marked and branded the yearlings at the same time and place. The branding iron was not put on

each yearling at the same instant of time, but one was first roped, thrown down, marked and branded, and then the other was similarly treated. There was no intermission or suspension of the work. The last yearling was branded and marked as soon as the first was turned loose, after being marked and branded. The yearlings involved in this statement were the red one for the marking and branding of which the defendant was tried and convicted on the day preceding this trial, and the white one for the marking and branding of which defendant was now on trial. The marking and branding of the two was done at the same time and place as stated. After these two yearlings were marked and branded, the defendant and Bill Howell, Rufus Mahan and the witness, drove them to the town of Comanche and sold them to Mr. Beeman. Hill, Moore & Co. paid for the yearlings. The defendant executed a bill of sale. The marks and brands put on the yearlings were those of the defendant. In driving them to the town of Comanche, a distance of twelve miles, the public road was traveled.

Continuing his evidence, the witness testified that he was in the town of Dublin in February, 1881, and at that time in that town met with the defendant, Rufus Mahan, William Whittenburg and Thomas Roberson. At that time he heard a trade between the defendant and Roberson. Roberson sold the defendant a white cow with a black or brown head, and her yearling, then running on the range. The cow was branded on the hip with a cross. Witness did not remember the mark in which she was said to be. The cow's range was said to be on Leon river. The witness had previously seen the cow and yearling and knew where she ranged. A bill of sale was executed by Roberson to the defendant, which conveyed to him the cow and yearling for the consideration of fifteen dollars, which was paid by the defendant to Roberson. Pressed on this point, the witness stated that he did not see the payment of the money, and did not know whether it was paid in greenbacks or specie. He only knew that a consideration of fifteen dollars was named in the bill of sale. William Whittenburg and Thomas Bibee were witnesses to the bill of sale. Bibee then lived in Erath county, but the witness did not know his present whereabouts. He did not know where Roberson now lives, but at the time he executed the bill of sale he lived in Dublin. The witness had not seen Roberson for twelve months or more. Witness did not know whether or not the bill of sale was ever acknowledged for rec-

ord. About two months before this time, the witness received this bill of sale from the hands of the defendant's wife, but had lost it. The witness got the bill of sale to use on this trial, and put it with a number of other papers of the defendant placed in his charge, but when he came to look for it to bring it to court, he could not find it.

Rufus Mahan was next introduced as a witness for the defense. He testified that he was at Hanson's cattle pen when Harbison's cattle were penned there in April, 1881. A number of persons, including those named by previous witnesses, were present at the time. The bunch of cattle included the two yearlings described. They were turned out with Harbison's cattle, and with them were driven to Mrs. Adams's pen. Harbison's cattle were driven on home, and the two yearlings were left in Mrs. Adams's pen. Groves and witness stopped at Mrs. Adams's and after dinner went on another cow hunt. Howell went home that night. Defendant and witness passed the night at Mrs. Adams's. Witness did not see Bill Howell next day. On the day after the yearlings were penned at Mrs. Adams's, defendant, witness and Groves marked and branded them, in the pen, putting them in defendant's mark and brand. They were marked and branded at the same time and place.

This witness testified that he was present in Dublin when defendant made a trade with Thomas Roberson for a cow and yearling. He described the cow and yearling exactly as did the witness Groves, and gave exactly the same account of that transaction throughout.

William Whittenburg was the next witness for the defendant. He testified that he knew the defendant and one Thomas Roberson. He saw these two parties in the town of Dublin sometime in February or March, 1881, and as a witness he signed a bill of sale executed by Roberson to defendant, which bill of sale, reciting a consideration of eighteen dollars, conveyed to the defendant a white cow with a black or brown head, and her yearling. The cow's brand, as recited in the bill of sale, was a cross on the hip. The mark was also given, but the witness did not remember what it was. The cow and yearling were then said to be on the range on the Leon river. Thomas Bibee also signed the bill of sale as a witness. This bill of sale was made out at Steward's store, in Dublin, Erath county, Texas. Witness saw no money pass between the parties. Witness did not know the

present whereabouts of Roberson and Bibee. The defense closed.

The State read in evidence, over objection, an application for attachment taken out by the defendant. It recited that the defendant expected to prove by the witness named in the application that Bill Howell drove the yearling to the defendant's pen, and requested the witness to take care of it. The reception of this evidence is the subject matter of the fifth ruling of this report.

In addition to the questions considered in the opinion, the motion for new trial denounced the verdict as unsupported by either law or evidence.

*Lindsay & Hutchison,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction was had upon an indictment which charges the defendant with the offense of unlawfully and feloniously marking and branding one yearling of the neat cattle species, not being his own property, but the property of some person to the grand jurors unknown, without the consent of the owner, and with intent to defraud.

In addition to the plea of not guilty, the defendant pleaded, specially, a former conviction for the same offense in the same court. This special plea was defective, in that it failed to set out the record of conviction, and did not specifically allege the identity of the person convicted, and the offense of which he was convicted. (*Williams* v. *The State,* 13 Texas Ct. App., 285.) It was not excepted to, however, by the State, and, upon the trial, the defendant was permitted, without objection, to introduce evidence in support of it.

It was proved. in support of the plea, that, at the same time and place that the defendant marked and branded the yearling involved in this prosecution, he also marked and branded another yearling, whose owner was to the grand jurors unknown, and that the defendant had been indicted, prosecuted and convicted, in the same court in which this trial was pending, for illegally marking and branding said last named yearling. This proof was made by oral testimony, and, strange to say, the record of said conviction was not read in evidence; at least, it does not appear that it was from the transcript before us. No

objections, however, were made by the State to any evidence offered by the defendant in support of his plea, and we shall therefore consider the evidence as we find it in the statement of facts.

In instructing the jury upon defendant's special plea, the learned judge used the following language: "It devolves on the defendant to prove the allegations in his special plea, and, to sustain this plea, the proof must satisfy you that the offense upon which he has been convicted and the one now charged are but one and the same offense, committed at one and the same time, by one and the same act, or that the two charges constitute but parts of one and the same transaction, committed at one and the same time. If these facts are proved to your satisfaction, then you need not pursue your inquiries any farther, but will find the special plea to be true. But, if you find that the two animals were taken at different times, by different acts, and marked and branded separately, at different times, by different acts, and that the marking and branding, if any, of one of the animals was done, perfected and completed by one act and transaction, and, after such completion, the other animal, if it belonged to a different owner, was, by a different act, marked and branded, it would be a different transaction and offense, if offense at all, although the branding and marking may have been done near the same time and place."

Defendant requested the court to give the following special charge, which was refused, viz.: "If you believe from the evidence in this case that the animal charged to be illegally marked and branded, in this case, was marked and branded at the same time and place as the animal charged to have been illegally marked and branded in the indictment in case number 622, The State of Texas against Charley Adams, on which indictment the defendant has been tried and convicted, so as to make the marking and branding of the two animals one and the same transaction, or part of the same transaction, then, in that event, if the jury so believe, they will find the special plea of defendant true."

It is well settled, in cases of theft, that the stealing of different articles of property, belonging to different persons, at the same time and place, so that the transaction is the same, is but one offense against the State; and the accused cannot be convicted on separate indictments, charging different parts of one transaction as if they were distinct offenses, as a conviction on

one of the indictments bars a prosecution on the other. (*Wilson*
v. *The State*, 45 Texas, 76; *Quitzow* v. *The State*, 1 Texas Ct.
App., 47; *Hozier* v. *The State*, 6 Texas Ct. App., 542; *Hudson* v.
*The State*, 9 Texas Ct. App., 151; *Addison* v. *The State*, 3 Texas
Ct. App., 40; *Hirshfield* v. *The State*, 11 Texas Ct. App., 207.)
We think this rule applies in this case with the same force and
to the same extent as it would apply in a case of theft. We can
perceive no reason why it should not. We think the court erred
in the latter portion of the charge quoted, whereby the jury
were instructed that if the marking and branding of one of the
animals was done, perfected and completed by one act and
transaction, and after such completion the other animal, if it
belonged to a different owner, was by a different act marked
and branded, it would be a different transaction and offense, al-
though the branding and marking may have been done near the
same time and place. This portion of the charge is in conflict
with what we understand to be the law, and was not, in our
opinion, applicable to the evidence before the court.

It mattered not whether one yearling was marked and branded
first, or whether both were marked and branded at the same in-
stant of time, and on the same identical spot of ground. The
true inquiry was, did the marking and branding of the two
yearlings in fact constitute one and the same transaction, al-
though accomplished by separate acts? Suppose the defendant
had been charged with the theft of the yearlings, and the proof
had shown that he took them from a pen, that he drove one of
them out of the pen, and turned and immediately, but by a dif-
ferent *act*, drove out the other; would not this be the same trans-
action and but one offense? We think in such case a conviction
of the theft of one of the yearlings would be a bar to an indict-
ment for the theft of the other, and that it would make no dif-
ference that the yearlings were owned by different persons.
(*Hudson* v. *The State*, 9 Texas Ct. App., 151.)

In our opinion the special charge asked by the defendant and
refused by the court was correct, and applicable to the evidence,
and should have been given in place of the objectionable portion
of the charge given by the court. It was plainly proved that
the two yearlings were marked and branded by the defendant
at the same time and place. As soon as one yearling had been
marked and branded the other was marked and branded, with-
out the lapse of any such time as would constitute the acts sep-
arate and distinct transactions, and without any change of

place.   It is clear to our minds from the evidence, and the well settled principles of the law, that the marking and branding of the yearlings was but one and the same transaction and constituted but one offense.

Upon the trial the State, over the objections of the defendant, read in evidence an application which defendant had made for attachments for certain witnesses, in which application he had stated the facts he expected to prove by said witnesses, which facts constituted a defense different from the one urged by the defendant on the trial.   This application was sworn to by the defendant, and at the time he made the same he was a prisoner confined in jail, and was not cautioned that it might be used against him.   It was error to admit this testimony, and the same was well calculated to influence the verdict of the jury unfavorably to the defendant, as the facts therein stated were shown upon the trial to be untrue.   (*Austin* v. *The State*, 15 Texas Ct. App., 388.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 14, 1884.